# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| PRICILLA ANN MAHOLMES, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> COMMISSIONER OF ) <br> SOCIAL SECURITY, ) <br> ) <br> Defendant. ) | Case No: 1:13-cv-01314-STA-egb |

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Plaintiff Pricilla Ann Maholmes filed this action to obtain judicial review of Defendant Commissioner's final decision denying her applications for disability insurance benefits under Title II and Supplemental Security Income ("SSI") of the Social Security Act ("Act"). Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on February 21, 2012. On April 27, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing."[1] The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on June 6, 1965, and was forty-six years old on the date of the ALJ's decision.[8] She has a general education diploma ("GED") and past work experience as a machine

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

[8] (R. 21, 143, ECF No. 8.)

operator and day care worker.[9] She last worked in April 2006, when she was laid off from her job.[10] Plaintiff initially alleged that she became disabled on September 19, 2009, due to chronic obstructive pulmonary disease ("COPD"), high blood pressure, anxiety, and a bulging disc but later amended her onset date to January 4, 2010.[11]

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements through December 31, 2011; (2) Plaintiff has not engaged in substantial gainful activity through her alleged onset date; (3) Plaintiff has the following severe impairments: COPD, nerve palsy of the arms and hands, degenerative disc disease of the lumbar spine, headaches, status post sinus surgery, and adjustment disorder; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except Plaintiff is limited to occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; standing and sitting at will; and frequently reaching, pushing and pulling, handling, fingering, and feeling; she is restricted from exposure to pulmonary irritants or temperature extremes and is able to understand, remember, and carry out short and simple instructions and make judgments on simple work-related decisions; (5) Plaintiff was a younger individual with a high school education on the alleged onset date; (6) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in

---

[9] (*Id.* at 50-51.)

[10] (*Id.* at 170.)

[11] (*Id.* at R. 46, 170, 201.)

3

the national economy that Plaintiff can perform; (7) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[12]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[13] The claimant bears the ultimate burden of establishing an entitlement to benefits.[14] The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[15]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

    1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

    2. An individual who does not have a severe impairment will not be found to be disabled.

    3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

    4. An individual who can perform work that she has done in the past will not be found to be disabled.

    5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[16]

---

[12]  (R. at 26-37.)

[13]  42 U.S.C. § 423(d)(1).

[14]  *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[15]  *Id.*

[16]  *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[17] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, there are substantial numbers of jobs that exist in the national economy that she can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. She specifically argues that a remand is appropriate based on new and material evidence that she submitted to the Appeals Council, the ALJ erred by failing to provide for any limitations resulting from her migraine headaches and nerve palsy, the ALJ did not properly address the medical source opinions from the state agency physicians, and the ALJ did not provide sufficient rationale for finding her not credible. Plaintiff's arguments are not persuasive.

Initially, Plaintiff asks the Court to remand her case under sentence six of 42 U.S.C. § 405(g) based on evidence she submitted to the Appeals Council that was not before the ALJ. This evidence consists of medical records showing treatment from Transouth Digestive dated March 27, 2012, through April 30, 2012, and medical records from West Tennessee Healthcare dated January 27, 2011.[18] The Appeals Council also received treatment notes from West Tennessee Healthcare dated from May 9, 2012, to May 16, 2012, and notes from Digestive Disease Clinic dated April 30, 2012, to May 12, 2012.[19]

---

[17] 20 C.F.R. § 404.1520(a).

[18] (R. 5, 715-747, ECF No. 8.)

[19] (Id. at 12-20.)

A court may consider evidence submitted to the Appeals Council only to determine whether the evidence satisfies the criteria for remand under sentence six of 42 U.S.C. § 405(g).[20] Thus, evidence submitted after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review.[21] "To obtain a sentence-six remand, a claimant has the burden to establish that there is (1) new evidence; (2) which is material; and (3) that there is good cause for the failure to submit it to the ALJ."[22] The Sixth Circuit has explained that "evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding."[23] Such evidence is deemed "material" if "there is a probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with new evidence."[24] The additional evidence must also be time-relevant; that is, it must relate to the period on or before the date the ALJ rendered a decision.[25] The party seeking a remand bears the burden of showing that these requirements are met.[26]

---

[20] *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010).

[21] *See Foster*, 279 F.3d at 357.

[22] *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013) (citation omitted).

[23] *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483-84 (6th Cir. 2006) (citation omitted).

[24] *Desantis v. Comm'r of Soc. Sec.*, 24 F. Supp. 3d 701, 709 (S.D. Ohio 2014) (quoting *Huffer v. Heckler*, 591 F. Supp. 626 (S.D. Ohio 1984) ("[R]emand to the SSA for consideration of new evidence is appropriate when there is a reasonable possibility that consideration of the offered evidence would have resulted in a different determination.")).

[25] *See Wyatt v. Sec. of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (finding that evidence of a subsequent deterioration or change in condition after the administrative hearing is immaterial).

[26] *See Foster*, 279 F.3d at 357 (6th Cir. 2001).

In this case, the reports in question contain no information about how the findings contained therein translate into functional limitations that would have impacted the ALJ's residual functional capacity determination, and they lack information as to Plaintiff's symptomatology concerning her alleged disabling limitations. Moreover, the Appeals Council correctly noted that some of the evidence related to a time after the ALJ's decision and, thus, did not affect the decision about whether Plaintiff was disabled on or before April 27, 2012.[27] Consequently, Plaintiff's argument that this matter should be remanded for consideration of the evidence presented to the Appeals Council fails.

Next, Plaintiff argues the ALJ erred by failing to provide for any limitations from her headaches and nerve palsy of the right arm. Although the ALJ found that Plaintiff's headaches and nerve palsy were severe impairments, he determined that the record contained no medical evidence of limitations or restrictions for performing work-related activities.

Plaintiff reported to Dr. Kristi Riddle in February 2012 that she had had headaches "on and off" for about five years, which were remedied when she had sinus surgery in November 2011.[28] She complained of a different type of headache, possibly due to tension or stress.[29] Dr. Riddle prescribed Topomax, which Plaintiff initially chose not to take because of side effects she heard about from a friend, but later did agree to take.[30] There are no records from Dr. Riddle or any other medical provider showing that Plaintiff continued to complain of severe headaches

---

[27] *See Wyatt*, 974 F.2d at 685.

[28] (R. 711, ECF No. 8.)

[29] (*Id.*)

[30] (*Id.* at 712, 716.)

after beginning her treatment regimen. Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.[31]

Plaintiff first complained of bilateral hand and wrist pain and tingling in 2011, at which time she was diagnosed with carpal tunnel syndrome.[32] Tests confirmed neuropathy; however, her physician noted that the changes were relatively mild in nature and would resolve in the next few months.[33] Dr. David Sickle of the Jackson Clinic reiterated this prognosis on January 4, 2012, and prescribed occupational therapy and a wrist splint.[34] When Plaintiff returned to the clinic on January 25, she did not complain of arm or wrist pain, and, by February 2012, Plaintiff exhibited good strength proximally and distally in both her upper and lower extremities.[35] No physician placed limitations on Plaintiff's ability to use her hands that are inconsistent with the ALJ's residual functional capacity determination. Therefore, Plaintiff's argument is without merit.

Plaintiff next argues that the ALJ erred in giving significant weight to the state agency physician opinions without discussing how the opinions were supported by the evidence of record. Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[36] and an opinion from a medical

---

[31] *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

[32] (*Id.* at 598.)

[33] (*Id.* at 590.)

[34] (*Id.* at 668.)

[35] (*Id.* at 661, 667, 712.)

[36] 20 C.F.R. §§ 404.1502, 404.1527(c)(1).

8

source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[37] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[38]

Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[39] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[40]

In the present case, the record contains the physical assessment from Dr. Karla Montague-Brown in which she opined that Plaintiff had no exertional, postural, or manipulative limitations, and that Plaintiff's symptoms were not credible because they were disproportionate to the clinical findings.[41] Dr. J. Shane's physical assessment found some exertional restrictions but noted that the report from West Tennessee Neuroscience indicated Plaintiff's symptoms were out of proportion to the objective findings and determined that Plaintiff was minimally

---

[37] *Id.* §§ 404.1502, 404.1527(c)(2).

[38] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

[39] 20 C.F.R. § 404.1527(c).

[40] *See* 20 C.F.R. § 404.1527(e)(2)(i); Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, 61 Fed. Reg. 34,466-01 (July 2, 1996).

[41] (R. 317-321, ECF No. 8.)

credible.[42] Dr. Victor O'Bryan completed a mental assessment and opined that Plaintiff had a few moderate limitations but was otherwise capable of detailed work, could interact appropriately in the workplace, and could adapt to normal changes in work routine.[43]

As noted by the Commissioner, the ALJ did not say that the state agency physician opinions directly supported his residual functional capacity finding; instead, he stated that these opinions supported his finding that Plaintiff was not disabled yet they were not consistent with the record as a whole because the physicians had not reviewed the entire record.[44] The ALJ gave these opinions significant weight only insofar as they were consistent with his residual functional capacity determination.

Although a physician's opinion about what a claimant can and cannot do is relevant evidence, that opinion is not determinative because the ALJ has the responsibility of assessing the claimant's residual functional capacity.[45] The responsibility for deciding issues such as whether the claimant's impairments meet or equal a listed impairment, the assessment of the claimant's residual functional capacity, and the application of vocational factors rests with the Commissioner.[46] Opinions on these issues "are not medical opinions . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that

---

[42] (*Id.* at 552-556.)

[43] (*Id.* at 578-581.)

[44] (*Id.* at 35.)

[45] *See* 20 C.F.R. §§ 404.1512(b)(2), 404.1513(b)(6), 404.1527(d)(2), 404.1545(a)(3), 404.1546(c); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2012).

[46] *See* 20 C.F.R. § 404.1527(e).

are dispositive of a case; i.e., that would direct the determination or decision of disability."[47] "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."[48] Consequently, the ALJ in this case acted within his authority.

Plaintiff also complains of the ALJ's credibility determination. In particular, Plaintiff argues that the ALJ did not give specific reasons for finding her complaints less than fully credible but only provided "standard, boilerplate language" in the decision.

The ALJ rather than this Court "evaluate[s] the credibility of witnesses, including that of the claimant."[49] A claimant's credibility comes into question when her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence.[50] "To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[51] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a

---

[47] 20 C.F.R. § 404.1527(e); *see* SSR 96-5p, 1996 WL 374183 (1996).

[48] *Coldiron*, 391 F. App'x at 439; *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 722 (6th Cir. May 7, 2012) (discounting claimant's assertion that ALJ overstepped authority in interpreting school records).

[49] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[50] *Id.*

[51] *Id.*

witness's demeanor while testifying."[52] However, the ALJ's credibility finding "must find support in the record."[53]

The Sixth Circuit recently reiterated that the "chief concern" with using a "template" or "boilerplate" language when assessing a claimant's credibility "is the risk that an ALJ will mistakenly believe it sufficient to explain a credibility finding, as opposed to merely introducing or summarizing one."[54] However, "usage of the template to introduce the ALJ's credibility finding is not by itself erroneous" as long as the ALJ provides "an adequate explanation of the adverse credibility finding."[55]

Here, the Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the severity of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity. The ALJ summarized and considered Plaintiff's written reports and hearing testimony, including her allegations of symptoms and limitations. The ALJ also described the medical and opinion evidence which did not support Plaintiff's allegations that her conditions were as limiting as alleged. While the ALJ used the "template" format, he did not limit the explanation of his decision to the boilerplate statements. Instead, he described the overall evidence as it related to each of her impairments and provided a detailed explanation of his credibility assessment and the basis for his decision.

---

[52] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[53] *Id.*

[54] *Sorrell v. Comm'r of Soc. Sec.*, 2016 WL 4245467 (6th Cir. Aug. 11, 2016) (quoting *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015)).

[55] *Id.*

For example, the ALJ pointed out the inconsistent statements Plaintiff made about the onset of her nerve palsy;[56] her drug usage;[57] her ability to attend to personal grooming;[58] and her various accounts of daily activities, as discussed below.[59] It is well-established that an ALJ may discount a claimant's credibility when he "finds contradictions among the medical records, claimant's testimony, and other evidence."[60]

Additionally, the ALJ looked at Plaintiff's daily activities and found that those activities were inconsistent with her alleged impairments. Plaintiff reported taking care of her grandson by cooking, shopping, and washing his clothes, cleaning up to three times a week, doing laundry, ironing, working on computers, working with children, attending school ball games, and grilling out in the summer.[61] Physical therapist Christy Sorrell documented Plaintiff's involvement in helping her mother with mobility/transfers and hygiene issues,[62] and Dr. Richard Spring stated that Plaintiff reported cleaning house, cooking, and doing yard work.[63] Plaintiff reported to William Sewell, Ph.D., that her daily activities include cleaning house, washing, drying and folding clothes, cleaning the bathroom, and watching her grandchildren when her daughter

---

[56] (R. 31, 589, 666, ECF No. 8.)

[57] (*Id.* at 33, 34, 290, 549.)

[58] (*Id.* at 34.)

[59] (*Id.*)

[60] *See Whitfield v. Comm'r of Soc. Sec.*, 2014 WL 1329362 at *9 (W.D. Mich. Mar. 28, 2014).

[61] (R. 29, 177-80, ECF No. 8.)

[62] (*Id.* at 539)

[63] (*Id.* at 292.)

worked.[64] Accordingly, the ALJ provided an adequate explanation of his adverse credibility finding.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[65] The Commissioner may carry this burden by applying the medical-vocational grids[66] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[67] However, if a claimant suffers from a limitation not accounted for by the grids, as in the present case, the Commissioner may use the grids as a framework for his decision but must rely on other evidence to carry his burden. In such a case, the testimony of a vocational expert may be used to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.[68]

Here, the ALJ relied on the testimony of a vocational expert in determining that there were significant numbers of jobs in the national economy that Plaintiff could perform.[69] The vocational expert's testimony was in response to a hypothetical question that set forth all the reasonable limitations Plaintiff had on her ability to work and, therefore, the ALJ properly relied on that testimony in his decision.[70] The vocational expert's testimony provided substantial

---

[64] (*Id.* at 565.)

[65] *Jones*, 336 F.3d at 474.

[66] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[67] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003).

[68] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001).

[69] (R. 36-27, ECF No. 8.)

[70] *See Foster*, 279 F.3d at 356-57.

evidence to support the ALJ's conclusion that Plaintiff could perform other work and was not disabled. Because substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Act during the relevant, the decision is **AFFIRMED**.

    **IT IS SO ORDERED.**

                                              **s/ S. Thomas Anderson**
                                              S. THOMAS ANDERSON
                                              UNITED STATES DISTRICT JUDGE

                                              Date:   August 29, 2016.